Christopher G. Ranson, CA SBN 235152
Attorney at Law
7301 Vista Del Mar, #A107
Playa Del Rey, California 90293
Telephone: (310) 430-2861
c.ranson.law@gmail.com

Attorney for Plaintiff Mark McClenning

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark McClenning, an individual,<br><br>                    Plaintiff,<br><br>           vs.<br><br>NCO Financial Systems, Inc., a<br>Pennsylvania Corporation,<br><br>                    Defendant. | Case No. CV10-3631 CAS(RZx)<br><br>SECOND AMENDED COMPLAINT |

COMES NOW PLAINTIFF MARK McCLENNING, and respectfully submits his second amended complaint as follows:

**JURSIDICTION**

1.     This is an action under the Fair Debt Collection Practices Act**,** hereinafter "FDCPA," 15 U.S.C. § 1692a *et seq*. and the Fair Credit Reporting Act, hereinafter "FCRA", 15 U.S.C. § 1681 *et seq*. which prohibit debt collectors from engaging in abusive, deceptive, unfair practices and obtaining consumer credit reports without permissible purpose.  Jurisdiction in this case is founded upon 15 U.S.C. § 1692k and 15 U.S.C. § 1681p, which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

## VENUE

2. Venue herein is proper as the conduct complained of in this action took place within this judicial district.

## THE PARTIES

3. Plaintiff Mark McClenning is an adult who resides within this judicial district.

4. Upon information and belief, NCO Financial Systems, Inc., (hereafter "NCO"), is a Pennsylvania corporation doing business within this judicial district that is engaged in the business of collecting debts in the State of California.

5. Upon information and belief, defendant is a debt collector as defined by the FDCPA, 15 U.S.C § 1692a(6).

6. Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3).

## FACTUAL ALLEGATIONS

7. Starting in or about February 2008, defendant NCO began a campaign of abuse and harassment against plaintiff.

8. On or about February 29, 2008, plaintiff received correspondence from defendant NCO, dated February 25, 2008, alleging that defendant NCO had received a delinquent account (hereinafter "alleged debt") from one of plaintiff's creditors for collection from plaintiff. NCO alleged that plaintiff owed a principal and interest. In addition, NCO alleged that plaintiff owed "fees" in the amount of $3,568.92.

9. On or about February 29, 2008, in response to NCO's collection correspondence, dated February 25, 2008, plaintiff forwarded written correspondence to NCO to dispute the alleged debt in its entirety, to advise NCO to cease any and all contact with plaintiff, and to request validation of the alleged debt.

10. To date, defendant NCO has not responded to plaintiff's written correspondence requesting validation of the alleged debt.

11. On March 11, 2008, plaintiff received a telephonic collections communication from NCO on his telephone voicemail. In this regard, at approximately 8:35 am, an NCO employee called plaintiff from number (410) 986-0085 and stated that he was calling from NCO, that the call was an attempt to collect a debt, and that plaintiff was requested to return the call to number (800) 688-4490.

12. On or about March 15, 2008 plaintiff received a collections letter from the law firm of Seals & Tenenbaum alleging that plaintiff owed its client a debt. The debt it alleged plaintiff owed was the same alleged debt that NCO had previously alleged plaintiff owed.

13. On or about March 15, 2008, plaintiff advised Seals & Tenenbaum in writing that he disputed the alleged debt; that Seals & Tenenbaum were to have no further contact with him; and that plaintiff requested validation of the alleged debt.

14. On or about March 24, 2008 plaintiff received correspondence, dated March 20, 2008, from Seals & Tenenbaum. Upon information and belief, Seals & Tenenbaum was acting as NCO's attorney and agent from approximately March 13, 2008 through approximately October 8, 2008. To this end, Seals & Tenenbaum's March 24, 2008 correspondence stated, in pertinent part, "NCO has sent the claim to us with authorization to commence suit against you. When we receive the full documentation concerning your . . . indebtedness, we will verify the debt."

15. On March 25, 2008, plaintiff received a telephonic voicemail from a debt collector at Seals & Tenenbaum, who, upon information and belief, was a non-attorney, requesting plaintiff to call back their office despite the fact Seals & Tenenbaum had not, and to date has never, provided validation of the alleged debt to plaintiff.

16. In light of Seals & Tenenbaum's failures to comply with the FDPCA as NCO's agent and attorneys, plaintiff was forced to incur the burden of retaining his own attorney to deal with Seals & Tenenbaum's abuses that continued for months thereafter. However, despite the inane threats from Seals & Tenenbaum as NCO's agents and attorneys attempting to collect the alleged debt, Seals & Tenenbaum never validated the debt. Further, Seals & Tenenbaum never commenced suit against plaintiff despite written and verbal threats that they would sue plaintiff in previous correspondence to plaintiff and plaintiff's attorney.

17. Upon information and belief, on or about October 8, 2008, NCO retained the law office of Erica Brachfeld (hereinafter "EB") to collect the alleged debt and to commence suit against plaintiff based on its invalidated allegations of plaintiff's indebtedness. Further, as NCO's agent and attorney, EB conducted a hard inquiry on at least one of plaintiff's credit reports in October of 2008 despite the fact that NCO had never provide validation of the alleged debt to plaintiff.

18. On January 14, 2009, at approximately 11:58 a.m., plaintiff received a voicemail message from number 866-835-1915 wherein a woman identifying herself as Kristen Suddles calling with the law firm of Brachfeld and Associates requested that plaintiff return her call to phone number 866-835-1915, ext. 6012.

19. On January 14, 2009, plaintiff returned the voicemail message left previously in the day by calling 866-835-1915, ext. 6012. Upon being connected with Kristen Suddles, plaintiff explained that he was returning a call left earlier on his voicemail. After identifying himself, plaintiff was advised by Kristen Suddles that her office was attempting to collect an alleged debt from plaintiff. Plaintiff then asked that Kristen Suddles to provide him with her California State Bar number. Kristen Suddles replied that she was not attorney. Plaintiff then terminated the call.

20. After terminating the call with Kristen Suddles, who, upon information and belief, is a non-attorney debt collector employed by EB, plaintiff

forwarded written correspondence, dated January 14, 2009, to EB by both first class mail and express mail to dispute the alleged debt in its entirety, to advise EB to cease any and all contact with plaintiff, and to request validation of the alleged debt.

21. Upon information and belief, EB received and signed for plaintiff's January 14, 2009 correspondence on January 16, 2009. EB did not, and to date, has not, validated the alleged debt.

22. On January 25, 2009, at approximately 6:49 p.m., while plaintiff was in the middle of Sunday dinner, plaintiff received an automated collections call from a caller, calling from 866-834-3556, identifying herself as Stephanie of Brachfeld and associates. The caller requested that plaintiff return her call to (866) 834-3556 regarding a debt.

23. On February 13, 2009, at approximately 8:36 a.m., plaintiff received a telephone call from 888-856-2120. When plaintiff answered the call, the female caller identified herself as calling with the law firm of Brachfeld and associates. Plaintiff then terminated the call.

24. On or about March 2, 2009, plaintiff discovered that EB, NCO's attorney, had filed suit against plaintiff on January 29, 2009 in Los Angeles Superior Court, Case no. 09k01533, (hereinafter "underlying case"), based on the debt that NCO had alleged plaintiff owed.

25. On March 3, 2009, plaintiff filed his answer to the complaint in the underlying case. Plaintiff's answer consisted of a general denial and affirmative defenses.

26. On March 17, 2009, at approximately 8:47 p.m., plaintiff received a telephone call from (888) 856-2120. Plaintiff let the call go to voicemail, and no message was left. Upon information and belief, the number (888) 856-2120 is a telephone line EB, NCO's agent and attorney, uses for its collection calls.

27. On March 18, 2009, at approximately 11:31 a.m., plaintiff received a voicemail message from a caller at telephone number (713) 579-7000. The caller identified himself as Mark Williams calling with the attorneys' office of Brachfeld and Associates. The caller stated that he was calling about a "time sensitive" matter. The caller stated that plaintiff should return his call to (866) 834-3556, ext. 6086, and that plaintiff should reference number "**NCO** 66572" when returning the call. The caller concluded the call by emphatically stating that plaintiff had 48 hours to return his call. Upon information and belief, Mark Williams is not a licensed California attorney, but is a non-attorney debt collector employed by EB, who was acting as NCO's attorney and agent at the time with regard to collection of the alleged debt from plaintiff.

28. On March 24, 2009, at approximately 3:33 p.m., plaintiff received a voicemail message from a caller at (866) 917-1327. The caller identified himself as Marty Brachfeld (hereinafter "MB"), and stated that he was calling with Brachfeld and Associates in connection with the underlying case. MB further stated that his call was in regard to plaintiff's answer in the underlying case, and that plaintiff should call him to work something out with regard to the answer. MB further stated that, in his humble opinion, plaintiff's general denial gives rise to a motion for judgment on the pleadings as it amounts to a negative pregnant pleading. MB asked plaintiff to return his call to (310) 273-7861, ext. 2321. Upon information and belief, MB is not, and was not at all relevant times herein, a licensed California attorney, but rather a non-attorney debt collector, who had previously been suspended from the practice of law, posing as a licensed California attorney working with the law firm of Brachfeld and Associates, NCO's attorney and agents in the underlying case.

29. On March 25, 2009, plaintiff forwarded correspondence by first class U.S. mail, dated March 25, 2009, to EB. The correspondence confirmed the March 24, 2009 call plaintiff received from MB. The correspondence set forth plaintiff's

position that his general denial and affirmative defenses were sufficient, and that if EB disagreed, she should file her potentially dispositive motion for judgment on the pleadings and stop wasting plaintiff's and the Court's time. Plaintiff's correspondence also instructed EB to put any legitimate concerns she had about the underlying case in writing, and he would respond, in turn, in writing. Plaintiff's correspondence also pointed out that MB was in violation of California Rule of Professional Conduct1-300 for the unauthorized practice of law, and that EB was in violation of California Rule of Professional Conduct1-311 for employing an individual engaging in the unauthorized practice of law. At no time during the pendency of the underlying case did EB attempt to contact plaintiff herself. Upon information and belief, each and every communication from EB's office to plaintiff herein alleged was from a non-attorney debt collector attempting to unlawfully collect a debt from plaintiff as agents and attorneys for NCO.

30. On March 27, 2009, at approximately 9:30 a.m., plaintiff received a voicemail message from (713) 579-7000, wherein the female caller identified herself as Ms. Cooper calling with attorney Brachfeld's office. Ms. Cooper then instructed plaintiff that he needed to return her call to (866) 834-3556, ext 6064 as soon as plaintiff received the call.

31. On or about April 13, 2009, plaintiff discovered that EB had filed a request for dismissal the complaint in the underlying case, in its entirety, without prejudice, on April 6, 2009. The Court entered the dismissal without prejudice the same day. EB did not obtain any release from plaintiff before filing her dismissal, nor did EB notify plaintiff of her intent to dismiss prior to the filing of the dismissal request. EB did not serve the request for dismissal to plaintiff prior to filing, nor did she serve plaintiff with a copy of the entry of dismissal despite California Rule of Court 3.1390, which requires service of the entry of dismissal on all parties by the party requesting the dismissal. At no time during the pendency of the underlying case did EB serve plaintiff with a response to his

demand for bill of particulars even though the bill of particulars was required by law to be served to plaintiff on March 31, 2009.

32.   In March of 2009 plaintiff filed suit against NCO (and others), hereinafter, "first NCO suit," for NCO's blatant violations and abuses of the Fair Debt Collection Practices Act ("FDCPA") as set forth above.  The case was assigned to this very Court, and was entitled, "Mark McClenning v. NCO Financial Systems, Inc. *et al.*," with case no. CV09-01674 CAS(FMOx).

33.   On July 20, 2009 NCO filed an answer to plaintiff's First Amended Complaint in the first NCO suit.  In its answer, NCO stated that it forwarded the alleged debt to EB for collection on or about March 11, 2008 despite the fact that, upon information and belief, NCO actually forwarded the alleged debt to Seals & Tenenbaum prior thereto as alleged above.  Further, Irene Velasco, a supervisor employed by EB, stated under penalty of perjury in a declaration, filed in the first NCO suit on August 24, 2009, that EB was retained as NCO's attorney on October 8, 2008 by NCO to collect the debt that NCO alleged plaintiff owed.

34.   During discussions between plaintiff's counsel and NCO's counsel on or about September 16, 2009 during the pendency of the first NCO suit, NCO, by and through its legal counsel, again took the position that the alleged debt was placed with EB on March 11, 2008, and that NCO did not undertake any collection efforts against plaintiff after that date.  NCO's counsel advocated this position despite the facts, as alleged above, that Seals & Tenenbaum engaged in harassing conduct, in violation of the FDCPA against plaintiff as NCO's agents and attorneys from approximately March 2008 until approximately October 2008.

35.   On or about September 20, 2009 plaintiff's counsel advised counsel for NCO in the first NCO suit, in writing, that the some of the allegations in NCO's answer to plaintiff's First Amended Complaint ran afoul of FRCP 11 in that NCO had no evidentiary support for its position that collection efforts on NCO's behalf and against plaintiff concluded on March 11, 2008.  To this end

plaintiff's counsel pointed to the actions of Seals & Tenenbaum as NCO's attorneys and agents from March 2008 until approximately October of 2008 on NCO's behalf against plaintiff, as set forth above.  Plaintiff's counsel further pointed to the declaration of Irene Velasco stating under penalty of perjury that NCO retained EB as its attorneys on October 8, 2008.  Despite the glaring contradictions in the actual facts and the patently false version set forth by NCO in its answer to the first amended complaint in the first NCO suit, NCO did not bother to take any affirmative action to amend its answer so that its pleading would comply and conform with the mandatory requirements of FRCP 11.

36.   On September 23, 2009 in the first NCO suit, NCO confessed to judgment by serving plaintiff with an FRCP 68 Offer of Judgment representing plaintiff's maximum statutory damages plus attorney fees and costs in an amount to be agreed to by counsel for the parties, and in the absence of agreement, by separate application to the Court.

37.   Upon taking judgment against NCO in the first NCO suit, plaintiff believed that NCO would cease its lawless conduct against plaintiff.  However, plaintiff was wrong. NCO continued its abusive and invalidated collection actions against plaintiff.  To this end, on or about April 2, 2010, plaintiff received correspondence from NCO, dated March 29, 2010, attempting to collect on the alleged debt despite not having validated the alleged debt pursuant to plaintiff's timely previous written notice of dispute and request for validation of the alleged debt.  Moreover, the March 29, 2010 correspondence from NCO to plaintiff again sought "fees" in the amount of $3,568.92, separately and in addition to principal and interest, despite the fact that in not validating the alleged debt previously in conformance with plaintiff's timely prior written request, NCO had failed to provide any basis whatsoever for its allegation that plaintiff owed "fees" in the amount of $3,568.92 to NCO.

38.     On April 27, 2010, in response to NCO's March 29, 2010 correspondence, plaintiff forwarded correspondence to NCO referencing his previous written correspondence and again requesting validation and again advising NCO to cease contact with plaintiff.  Plaintiff incurred out of pocket expenses in postage fees for forwarding his April 27, 2010 correspondence to NCO due to NCO's continuing harassment of plaintiff.

39.     On or about June 11, 2010, plaintiff discovered that NCO had conducted an inquiry on at least one of plaintiff's credit reports in March of 2010 and July of 2009.  NCO conducted these inquiries without having previously validated the alleged debt despite plaintiff's previous timely written request for validation.  Furthermore, with regard to the July 2009 inquiry, in addition to violating the FDCP, upon information and belief, NCO had no valid assignment, or any other authority whatsoever, implied or explicit, that would provide NCO with legal authorization to conduct an inquiry on plaintiff's credit report.  To this end, plaintiff believes that the July 2009 inquiry on plaintiff's credit report was retaliatory.  Plaintiff believes that this inquiry amounted to a continuance of the campaign of harassment and abuse against plaintiff by NCO through NCO blatantly intruding into plaintiff's private financial affairs, without any legal authorization to do so, in response to plaintiff having filed suit against NCO in the first NCO suit.

40.     As a result of the acts alleged above, plaintiff suffered loss of sleep, anxiety, embarrassment, humiliation, anger and frustration.  Plaintiff continues to live in apprehension that defendant NCO will once again renew its intentional campaign of abuse and harassment against plaintiff in defiance of plaintiff's rights.

41.     The acts complained of above are part of a pattern and practice of abuse and harassment by defendant NCO.

//

//

# FIRST CLAIM FOR RELIEF

(For FDCPA Violations)

42. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-41 above.

43. Defendant NCO violated the FDCPA. Defendant's violations include, but are not limited to:

a) violating 15 U.S.C § 1692g(b) of the FDCPA by not validating the alleged debt and continuing collection activities by contacting plaintiff by and through NCO's correspondence, dated March 29, 2010, and conducting inquiries on plaintiff's credit report in July of 2009 and March of 2010 after receiving timely prior written notice from plaintiff that plaintiff disputed the alleged debt;

b) violating 15 U.S.C. § 1692c(c) for contacting plaintiff, by and through NCO's March 29, 2010 correspondence to plaintiff, after plaintiff's provided previous written notice to NCO to cease contact with plaintiff;

c) violating 15 U.S.C. § 1692e(2) by demanding "fees" for which NCO is not and was not legally entitled to collect by through NCO's Mach 29, 2010 correspondence to plaintiff; and

d) violating 15 U.S.C. § 1692f(1) by demanding "fees" for which no legal authorization exists by and through NCO's March 29, 2010 correspondence to plaintiff.

44. As a result of the above violations of the FDCPA, defendant NCO is liable to plaintiff for: plaintiff's actual damages; statutory damages; and costs and attorney's fees.

# SECOND CLAIM FOR RELIEF

(For FCRA Violations)

45. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-44 above.

46. Defendant NCO violated the FCRA by obtaining plaintiff's credit reports, on at least two occasions, without permissible purpose to do so. Defendant violated 15 U.S.C. § 1681n by conducting inquiries on at least one of plaintiff's credit reports in both July of 2009 and March of 2010 without having first validated the debt that defendant NCO alleged plaintiff owed, despite receiving timely written notice of plaintiff's dispute and request for validation prior thereto.

47. The acts committed by defendant NCO, as described above, were done willfully, intentionally and in reckless disregard of plaintiff's rights with the purpose of coercing plaintiff to pay the invalidated alleged debt. Further, with regard to the July 2009 inquiry on plaintiff's credit report by NCO, plaintiff alleges, upon information and belief, that NCO obtained plaintiff's credit report for the purpose of retaliating against plaintiff for plaintiff suing NCO in the first NCO suit because, upon information and belief, NCO did not have any assignment and/or authorization from the creditor, who owned the alleged debt, to collect the alleged debt in July of 2009. Defendant NCO's acts described above justify the imposition of punitive damages pursuant to the 15 U.S.C. § 1681n of the FCRA against defendant NCO as NCO's acts, as described above, amount to willful noncompliance under the FCRA.

48. As a result of the above violations of the FCRA, defendant NCO is liable to plaintiff for: plaintiff's actual damages and/or statutory damages; plaintiff's costs and attorney's fees; and punitive damages against defendant NCO in such amount as the Court may allow.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that judgment be entered in plaintiff's favor and against defendant for the following:

A.   Actual damages;

B.   Statutory damages pursuant to 15 U.S.C. § 1692k and 15 U.S.C. § 1681n;

C. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k and 15 U.S.C. § 1681n;

D. Punitive damages pursuant to 15 U.S.C. § 1681n in such amount as the Court may allow; and

E. For such other and further relief as may be just and proper.

DATED: August 11, 2010 /s/Christopher G. Ranson
Christopher G. Ranson
Attorney for Plaintiff
Mark McClenning